******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRENDA SNELL *v.* NORWALK YELLOW
CAB, INC., ET AL.
(AC 38155)

Keller, Prescott and Harper, Js.

*Argued November 16, 2016—officially released April 4, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodator, J.)

*Adam J. Blank*, for the appellant (plaintiff).

*Laura Pascale Zaino*, with whom, on the brief, were
*Kevin M. Roche, Rachel J. Fain*, and *Logan A. Forsey*,
for the appellees (named defendant et al.).

*Opinion*

PRESCOTT, J. In *Barry* v. *Quality Steel Products Inc.*, 263 Conn. 424, 436–39, 820 A.2d 258 (2003), our Supreme Court abolished the use of the superseding cause doctrine in cases in which the conduct of the intervening actor was merely negligent. This appeal requires us to consider the vitality of the doctrine in circumstances in which the conduct of the intervening actor is criminally reckless. We conclude that the doctrine is alive and well in such cases.

The plaintiff, Brenda Snell, appeals from the judgment of the trial court rendered in accordance with a jury verdict in favor of the defendants, Johnley Saineval and his employer, Norwalk Yellow Cab, Inc. (Yellow Cab).[1] The plaintiff claimed that she sustained serious physical injuries when, while walking on the sidewalk, she was struck by a taxicab that had been stolen from Saineval after he negligently left it unattended in a high crime area with the keys in the ignition. The plaintiff claims on appeal that (1) the trial court improperly instructed the jury, and submitted to it an interrogatory, on the doctrine of superseding cause, which doctrine she argues was inapplicable on the basis of the evidence presented at trial; (2) even assuming that the doctrine of superseding cause was applicable, the court's instructions and interrogatories misled the jury; and (3) the trial court improperly denied the plaintiff's motion to set aside the verdict and for a new trial in which she argued that the jury's verdict was irreconcilable with the jury's interrogatory responses.

We disagree with the plaintiff that the doctrine of superseding cause is inapplicable in this case. Furthermore, we conclude that although the court's instruction and interrogatory relating to the defendants' superseding cause defense may not have been perfectly clear, they were nonetheless sufficient to properly guide the jury in reaching a verdict. We further determine that, to the extent that any error existed, it logically would have inured to the benefit of the plaintiff and, thus, was harmless. Finally, we conclude that the jury's verdict and responses to the court's interrogatories are not irreconcilable as a matter of law, and, therefore, the court properly denied the plaintiff's postjudgment motion to set aside the jury's verdict. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts, which largely are undisputed in this case. On December 3, 2009, Saineval, who was employed by Yellow Cab as a taxicab driver, was operating a taxicab owned by Yellow Cab in Norwalk. In the early evening, he drove the taxicab to Monterey Village, a housing complex located in an area of the city with significant criminal activity. Saineval parked the taxicab and went inside one of the apartments, leaving the taxicab

unlocked and unattended with the keys in the ignition.[2]

Two teenagers, Shaquille Johnson and Deondre Bowden, who that afternoon had been consuming alcohol and smoking marijuana, noticed the parked taxicab. Although they initially intended to steal anything of value that they could find inside the unlocked taxicab, once they observed the keys in the ignition, the two teens decided to steal the taxicab and to go on a "joyride." They drove the taxicab from Norwalk to Stamford, making one brief stop in between, with each of the teens taking a turn driving the vehicle.

When they reached Stamford, they became ensnarled in traffic. At that time, Bowden was driving the taxicab. He "kind of nodded off" and rear-ended the vehicle in front of him. Bowden, who was both "tipsy" and "high," then attempted to flee the scene. In order to maneuver the taxicab around the vehicle he had struck, Bowden drove the taxicab up over the curb of the road and onto the adjoining sidewalk. In doing so, Bowden first hit a fire hydrant before striking the plaintiff with the taxicab.

The plaintiff sustained severe physical injuries, particularly to her midsection, requiring millions of dollars in medical expenditures as of the time of trial, with additional treatments and surgeries expected. After hitting the plaintiff, Bowden never attempted to stop the vehicle; he and Johnson exited the stolen taxicab while it was still moving and fled the scene on foot, returning home by train. The police later identified the teens as the individuals involved in the hit and run of the plaintiff and arrested them.[3]

The plaintiff initially commenced this action solely against Saineval and Yellow Cab.[4] Johnson and Bowden were not named by the plaintiff as defendants in the civil action. Although the defendants filed an apportionment complaint against the two teens, the court later granted the plaintiff's motion to strike the apportionment complaint, agreeing with the plaintiff that apportionment was unavailable in the present case because the misconduct of the teenagers was not pleaded as mere negligence, but as reckless or intentional conduct. See General Statutes § 52-572h (o) ("there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct"); *Allard* v. *Liberty Oil Equipment Co.*, 253 Conn. 787, 801, 756 A.2d 237 (2000) (recognizing that § 52-575h [o] was enacted to expressly overrule in part *Bhinder* v. *Sun Co.*, 246 Conn. 223, 234, 717 A.3d 202 [1998], in which our Supreme Court had recognized common law extension of statutory apportionment liability for parties whose conduct was reckless, wilful and wanton).

The operative second amended complaint contains

two counts relevant to the issues on appeal.[5] Count one sounds in negligence against Saineval. According to the plaintiff, Saineval acted negligently by leaving his taxicab in an unguarded public parking lot in a high crime area with the keys in the ignition, which created the reasonably foreseeable risk that the taxicab would be stolen and that a thief would drive the taxicab in an unsafe manner and cause injury to a person or to property. Count two alleges that Yellow Cab was vicariously liable for Saineval's negligence on a theory of respondeat superior.[6] Prior to trial, Yellow Cab conceded that it would be liable to the same extent that Saineval was found liable on count one.

In their amended answer, the defendants, by way of a special defense, raised the doctrine of superseding cause. The defendants pleaded that "[i]f the plaintiff sustained the injuries and losses as alleged in her complaint, said injuries and losses were the result of the intentional, criminal, reckless and/or negligent conduct of a third party, which intervened to break the chain of causation between [Saineval's] alleged negligence and/or carelessness and the plaintiff's alleged injuries and losses."

The matter was tried before a jury, which heard evidence over the course of several days between December 2, 2014, and December 10, 2014. Each side submitted a request to charge to the court, each of which included a proposed instruction addressing the issue of superseding cause.[7] Throughout the trial, the court provided the parties' attorneys with drafts of its proposed jury instructions as it developed them, indicating to the attorneys that it was willing to entertain any comments or suggestions from the parties. The court conducted a number of these discussions on the record.

For example, the court initially indicated to the parties that it was not inclined to give a superseding cause instruction to the jury because, on the basis of its reading of our Supreme Court's decision in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 424, superseding cause was no longer part of our tort jurisprudence except in limited circumstances, specifically, cases involving either an intervening intentional tort, act of nature, or criminal event that was unforeseeable to the defendant. The court suggested that the exception was not at issue in the present case because, under the plaintiff's theory of liability, the intervening theft of the car was entirely foreseeable.

The defendants, however, argued that the court was focusing on the wrong criminal act. They indicated that it was not necessarily the theft of the taxicab in this case that warranted an instruction on superseding cause, but the unforeseeability of the thieves' subsequent criminal conduct, namely, intentionally driving the taxicab up onto a sidewalk to evade responsibility for a rear-end collision and the ensuing criminal assault on the plain-

tiff. Furthermore, the defendants noted that part of the court's rationale in *Barry* for abandoning the doctrine of superseding cause in cases alleging that an intervening negligent act or acts contributed to a plaintiff's injuries, was that apportionment of liability between tortfeasors was permitted, which would prevent a less culpable defendant from inequitably shouldering full responsibility for injuries that resulted from multiple negligent acts. The defendants contended that, unlike *Barry*, this case involved intervening actions of other tortfeasors that were not merely negligent, but reckless and criminal. In such a case, the defendants argued, apportionment of liability is unavailable by statute; see General Statutes § 52-572h (o); and, thus, the primary policy rationale underlying the abolishment of the doctrine of superseding cause was absent. The court indicated that it would review the case law and give the issue further consideration in light of these arguments.

On December 10, 2014, the court provided counsel with the latest draft of its jury instructions and also with copies of draft interrogatories that the court intended to submit to the jury. The court indicated that the current version of the instructions included a new paragraph that the court had decided to add after further consideration of the case law concerning superseding cause and its discussions with the parties. That paragraph instructed the jury to consider whether the theft of the taxicab and the resulting accident involved intentional acts that were outside the scope of the risk created by Saineval's conduct, and that if the jury found this to be so, then the defendants should not be found responsible for the plaintiff's injuries because the conduct of the two teens would have been the proximate cause of those injuries, thus relieving the defendants of any liability. The court also drafted a new, related interrogatory that asked the jury to state whether the "accident"[8] that occurred was outside the scope of the risk created by Saineval's act of leaving the keys in the ignition of the taxicab. The court directed the jury to return a verdict for the defendants if the answer to that inquiry was yes.

Following the close of evidence later that day, the court held a charging conference. At the charging conference, the plaintiff stated that it believed the additional paragraph added by the court to its latest draft instructions was unnecessary and confusing and that, in defining and explaining the concept of proximate cause, the court adequately had covered both foreseeability and whether Saineval's conduct was a substantial factor in causing the plaintiff's injuries. The plaintiff also stated that she did not think there was any evidence from which the jury could construe that the teens had intentionally sought to harm her. The court suggested that the additional instruction was necessary to comport with case law, referring in particular to *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150,

971 A.2d 676 (2009).[9] It indicated its belief that foreseeability for purposes of determining negligence and scope of the risk for purposes of applying superseding cause, although closely related, were slightly different concepts. The court agreed that there was nothing in the record to support a finding that the assault on the plaintiff was intentional, but noted that the two teens had also engaged in other criminal conduct, including intentionally stealing the taxicab and intentionally fleeing the scene to evade responsibility after striking the plaintiff.

The defendants noted that although the court's proposed jury instruction made reference to a special defense, it never identified that defense; in fact, the term "superseding cause" was never used by the court. The defendants argued that they intended to reference that term in its closing arguments and that they were entitled to a separate charge addressing their superseding cause defense. The defendants also took the position that, unlike in criminal law, tort law made no meaningful distinction between reckless and intentional conduct, and, thus, they asserted that it was inconsequential whether the criminal assault on the plaintiff was the result of intentional or reckless conduct for purposes of applying the doctrine of superseding cause.[10]

On December 11, 2014, prior to closing arguments, the plaintiff requested that the court change the order of the proposed interrogatories. The interrogatory that the court had added regarding scope of the risk, which the court indicated related to the special defense of superseding cause, was, at the time, interrogatory number four. Interrogatory number five at that time asked whether the plaintiff had proven that some or all of her injuries were proximately caused by Saineval. The plaintiff argued that because proximate cause was an element of her prima facie case, it made more sense for the jury to answer that interrogatory and fully establish a prima facie case before turning to any consideration of a special defense. According to the plaintiff, this would also negate the need for a retrial in the event there was a defendants' verdict on the special defense that was overturned later on appeal; all that would be required would be a hearing in damages.[11] The defendants did not agree that a switch was necessary. The court nevertheless indicated that it would most likely make the switch, and later incorporated the change in the interrogatories it submitted to the jury. The court also indicated that it had made some additional changes based upon the positions of the parties at the charging conference, including referring to the doctrine of superseding cause by name.

After the parties concluded their closing arguments, the court read its instructions to the jury. The relevant portions of the court's instructions for purposes of the

present appeal are those addressing proximate causation, which provided in relevant part as follows: "Once you've gotten past factual causation, you need to address proximate cause. Proximate cause means that there must be a sufficient causal connection between the act or omission alleged, and any injury or damage sustained by the plaintiff.

"An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing the injury. That is, if the injury or damage was a direct result, or a reasonable and probable consequence of the defendant's act or omission, it was proximately caused by such an act or omission.

"In other words, if an act had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause. In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the negligence of the defendant.

"If you find that the plaintiff complains about an injury which would have occurred even in the absence of the defendant's conduct, or is not causally connected to this accident, you must find that the defendant did not proximately cause that injury.

"Under the definitions I have given you, negligent conduct can be a proximate cause of an injury, if it is not the only cause, or even the most significant cause of the injury, provided it contributes materially to the production of the injury, and thus is a substantial factor in bringing it about.

"Therefore, when a defendant's negligence combines together with one or more other causes to produce an injury, such negligence is a proximate cause of the injury if its contribution to the production of the injury, in comparison to all other causes, is material or substantial.

"When, however, some other causal causes contributes so powerfully to the production of an injury, as to make the defendant's negligent contribution to the injury merely trivial or inconsequential, the defendant's negligence must be rejected as a proximate cause of the injury, for it has not been a substantial factor in bringing the injury about.

"Or to put it another way, if you find that the injury would have been sustained, whether or not the defendant had been negligent, his negligence would not have been a proximate cause of the accident. It is your responsibility to determine which, if any, of the injuries and damages claimed by the plaintiff were proximately caused by the conduct of the defendant.

"The defendants have claimed that the theft and operation of the car by [Johnson] and [Bowden], and the

resulting accident, constituted such an event. An event that was so overpowering in consequence as to render any possible negligence on the part of defendant Saineval relatively insignificant, and therefore not a proximate cause of the injuries sustained by plaintiff.

"Foreseeability of the car being stolen, something you would have considered in connection with determining whether the defendant was negligent, also may be considered in this regard. It is for you to decide whether the theft of the car and subsequent manner of operation was so overwhelming in significance, or whether they constituted a concurrent proximate cause but not of sufficient magnitude as to render the defendant's negligence inconsequential.

"To put it another way, if you find that the theft of the car and subsequent driving of the vehicle and resulting accident were intentional acts that were not within the scope of the risk which was created by the defendant's conduct, then the defendant could not be found responsible for the injuries to the plaintiff as the conduct of [Johnson] and [Bowden] would have been the proximate cause of the injuries sustained by the plaintiff, thereby relieving the defendant of any liability.

"To the extent that you find that the plaintiff has proven, by a preponderance of the evidence, that the negligence of defendant Saineval was a proximate cause of any or all of the injuries and damages claimed to have been sustained by the plaintiff, as I have defined proximate cause to you, you are to proceed to determine the issues as to the amount of damages, following the rules I'm about to give you."

Following the jury charge, the court inquired whether the parties had any additional objections to the charge other than those raised at the charge conference. Neither party raised any additional objections. A written copy of the court's charge was made an exhibit and provided to the jury.

The following day, the jury returned a verdict in favor of the defendants. The relevant interrogatories submitted to the jury, and the jury's response, are as follows: "1. Did plaintiff Brenda Snell prove, by a preponderance of the evidence, that defendant Johnley Saineval failed to exercise reasonable care when he left the keys to his taxicab in the vehicle, when he went inside the apartment complex at Monterey Village on the evening of December 3, 2009? [Answer] Yes . . . 2. Did plaintiff prove that it was reasonably foreseeable that a motor vehicle, left in a parking area of Monterey Village with the key in the ignition on the evening of December 3, 2009, might be stolen? [Answer] Yes . . . 3. Did plaintiff prove that it was reasonably foreseeable that if a motor vehicle were to be stolen from the parking area at Monterey Village, it might be in an accident, causing injury? [Answer] Yes . . . 4. Did plaintiff Brenda Snell

prove that some or all of the injuries she sustained on the evening of December 3, 2009, were proximately caused by the negligence of defendant Johnley Saineval? [Answer] Yes . . . 5. Did defendant prove that the accident that occurred on December 3, 2009 was outside the scope of risk created by defendant leaving his key in the ignition of a car parked at Monterey Village? [Answer] Yes . . . ." The directions contained in the interrogatories instructed the jury to return a defendants' verdict if it answered interrogatory five in the affirmative, and, therefore, the jury did not respond to the remainder of the interrogatories submitted. The court accepted the jury's verdict.

The plaintiff filed a postjudgment motion asking the court to set aside the verdict and to order a new trial. The plaintiff argued that despite the jury having found that the theft of the taxicab and the subsequent accident resulting in injuries were foreseeable and that Saineval's actions were a proximate cause of her injuries, the jury instructions and attendant interrogatories permitted the jury to simultaneously and inconsistently find that her being struck by the taxicab in the manner that occurred nevertheless was outside the scope of the risk created by Saineval's negligence.

The court issued a detailed and thorough memorandum of decision denying the plaintiff's motion. The court found that there was no basis for concluding that it should not have submitted the doctrine of superseding cause to the jury in this case or that the resulting verdict and interrogatories were fatally inconsistent. The court explained that it saw "nothing inherently inconsistent with a jury finding a 'standard' proximate cause instruction satisfied, while also later finding superseding cause established when viewed from the alternative perspective of a charge on that point." This appeal followed.

I

The plaintiff first claims that the doctrine of superseding cause was not applicable to this case, and, therefore, the court improperly instructed the jury regarding superseding cause and submitted an improper interrogatory.[12] Much of the plaintiff's argument focuses on our Supreme Court's decision in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 424, which abolished use of the doctrine except in certain circumstances. According to the plaintiff, the portion of the jury instruction intended to invoke the doctrine of superseding cause and the related interrogatory regarding scope of the risk were unwarranted because there was no evidence adduced at trial that Bowden intentionally had sought to injure the plaintiff when he struck her with the stolen taxicab. In other words, the plaintiff contends that in order for a third party's conduct ever to qualify as a superseding cause, the third party must have acted with the specific intent to harm the plaintiff.

The defendants counter that merely reckless criminal action can amount to a superseding cause if the trier of fact determines that such action was a substantial factor in causing the harm and that it fell outside the scope of the risk created by the defendant's own negligence. According to the defendants, it was entirely appropriate for the court to instruct the jury that it could consider whether the teens' theft of the taxicab and subsequent criminal conduct were a superseding cause of the plaintiff's injuries that cut off any liability otherwise attributable to Saineval's actions. The defendants contend that such an instruction was particularly warranted in the present case because apportionment of liability was not available in light of the fact that (1) the plaintiff did not name the thieves as defendants, (2) she successfully opposed the defendants' efforts to name them as apportionment defendants, and (3), as the court concluded, their conduct exceeded negligence. We agree with the defendants that the court properly permitted the jury to consider the doctrine of superseding cause. Accordingly, we reject the plaintiff's claim to the contrary.

A claim challenging the applicability of a legal doctrine like superseding cause presents a question of law over which our review is plenary. See *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 433–35; see also *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 347, 15 A.3d 601 (2011) (employing plenary review in considering applicability of doctrine of res judicata); *Commission on Human Rights & Opportunities* v. *Hartford*, 138 Conn. App. 141, 169, 50 A.3d 917 (noting plenary review of applicability of relation back doctrine), cert. denied, 307 Conn. 928, 55 A.3d 570 (2012).

Before turning to the plaintiff's claim that the doctrine of superseding cause was inapplicable in the present case, it is necessary first to review the parameters of the doctrine as it presently exists under Connecticut law. As the trial court in this case aptly noted in denying the motion to set aside the verdict, although the concepts underlying the doctrine of superseding cause may be easy to identify, their application to the specifics of a particular case can be a far more difficult task.

It is axiomatic that "[t]he elements of a cause of action for negligence are duty, breach, causation and damages." *Coste* v. *Riverside Motors, Inc.*, 24 Conn. App. 109, 112, 585 A.2d 1263 (1991). The element of causation is itself composed of two components: causation in fact, also referred to as actual cause, and proximate cause. *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 329, 107 A.3d 381 (2015). Both must be satisfied to establish legal causation. "With respect to the first component, causation in fact, we ask whether the injury would have occurred but for the actor's conduct. . . . Because actual causation, in theory, is virtually lim-

itless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The test for proximate cause is *whether the defendant's conduct was a substantial factor in producing the plaintiff's injury.* . . . This substantial factor test reflects the inquiry fundamental to all proximate cause questions, namely, whether the harm [that] occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citations omitted; emphasis added; internal quotation marks omitted.) Id. "Legal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation." *Kowal* v. *Hofher*, 181 Conn. 355, 359, 436 A.2d 1 (1980). "[P]olicy considerations generally underlie the doctrine of proximate cause." Id., 360.

As its name implies, the doctrine of superseding cause is logically related to the element of legal causation and, like proximate cause, is, at its core, a legal construct that serves as a limitation on liability.[13] As our Supreme Court has described it, "[t]he function of the doctrine [of superseding cause] is to define the circumstances under which responsibility *may be shifted entirely* from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be [culpable], or to some other force. . . . Thus, the doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere. . . . If a third person's [culpability] is found to be the superseding cause of the plaintiff's injuries, that [culpability], rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 434–35.[14]

The Restatement (Second) of Torts, to which our courts have consistently turned for guidance in crafting our own common law, defines a superseding cause as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another *which his antecedent negligence is a substantial factor in bringing about.*" (Emphasis added.) 2 Restatement (Second), Torts § 440, p. 465 (1965). In other words, a superseding cause is simply an intervening action or force that, as a matter of policy, operates to shield from liability even a defendant whose own negligence was a "substantial factor in bringing about"—and, thus, proximately caused—a plaintiff's harm.[15]

Sections 442 through 453 of the Restatement (Sec-

ond) of Torts contain general principles intended to help courts determine under what circumstances policy may dictate that the actions of a third party or other intervening force constitute a superseding cause. Of particular relevance to this case are §§ 442B, 448, and 449, which have been cited favorably or adopted by our Supreme Court in the past. See *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 607, 662 A.2d 753 (1995) (noting adoption of § 442B); *Doe* v. *Saint Francis Hospital & Medical Center*, 309 Conn. 146, 177–78, 72 A.3d 929 (2013) (relying in part on §§ 448 and 449).

Section 442B provides that "[if] the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person *and is not within the scope of the risk created by the actor's conduct.*" (Emphasis added.) 2 Restatement (Second), Torts § 442B, p. 469 (1965). Comment (c) of § 442B makes reference to both intentional torts and criminal acts by a third party, and provides in relevant part that § 442B "does not apply where the harm of which the risk has been created or increased by the actor's conduct is brought about by the intervening act of a third person which is intentionally tortious *or criminal*, and is not within the scope of the risk created by the original negligence. Such tortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk, in which case the actor may still be liable for the harm, under the rules stated in §§ 448 and 449. *But if they are not, the actor is relieved of responsibility by the intervention of the third person.*" (Emphasis added.) Although § 442B references "harm *intentionally* caused by a third person," this appears to be incongruous with much of the commentary, which refers more generally to intervening acts that are either intentional torts or criminal acts, without limitation to a particular level of mens rea. (Emphasis added.) Nowhere in the commentary to this section is there any indication that only crimes involving a specific intent to cause harm can amount to a superseding cause nor, as discussed in further detail subsequently, do we construe the doctrine that narrowly.

Section 448 of the Restatement (Second) of Torts provides: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." Finally, § 449 provides: "If the likelihood that a third person may act in a particular

manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." 2 Restatement (Second), Torts § 449, p. 482 (1965).

Accordingly, even in cases in which the risk of a third party's intervention is a generally foreseeable consequence of a defendant's actions, it is a question of fact whether the third party's intervening actions fall somewhere within the hazard created by the defendant's negligence, i.e., within the scope of the risk. Only if the answer to that question is so abundantly clear as to be determinable as a matter of law should the court decline to give an instruction on superseding cause. Otherwise, the inquiry is a factual issue that should be presented to and decided by a jury. If the jury determines that the superseding action that occurred falls outside the scope of the risk of the third party intervention created by the defendant's negligence, liability is appropriately shifted away from the negligent defendant.

Although our Supreme Court has sanctioned the approach in the Restatement (Second) of Torts to superseding cause; see, e.g., *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 607–608; it also has criticized its continued usefulness in some instances. Specifically, in *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 446, our Supreme Court elected to abandon the doctrine of superseding cause in those cases in which the defendant claimed that his liability for injuries had been cut off as a result of a subsequent *negligent act* by a third party. Although *Barry* did not abolish outright use of the doctrine in all instances, the parties disagree on appeal about whether the present case falls within the enumerated exceptions.

The court in *Barry* first acknowledged the close relationship between proximate cause and superseding cause. Id., 433–35. The court then noted that "when a defendant claims that a subsequent negligent act by a third party cuts off its own liability for the plaintiff's injuries . . . superseding cause instructions serve to complicate what is fundamentally a proximate cause analysis." Id., 436. The court explained that "because our statutes allow for apportionment among negligent defendants; see General Statutes § 52-572h; and because Connecticut is a comparative negligence jurisdiction; General Statutes § 52-572o; the simpler and less confusing approach to cases . . . [in which] the jury must determine which, among many, causes contributed to the plaintiffs' injury, is to couch the analysis in proximate cause rather than allowing the defendants to raise a defense of superseding cause."[16] (Footnote omitted.) Id., 436–39.

Although the court in *Barry* abolished use of the doctrine of superseding cause in those cases in which a third party's negligence is alleged to have intervened

to cause the plaintiff's injuries, opting to subsume the doctrine into the proximate cause inquiry, it also indicated in a footnote that it was not mandating that courts utilize this same approach in all civil cases, explaining that its holding did "not necessarily affect those cases [in which] the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." Id., 439 n.16. In those cases falling within one of the enumerated exceptions noted in *Barry*, therefore, a defendant properly could continue to raise the doctrine of superseding cause as a defense.[17]

The plaintiff contends that the continued validity of the doctrine of superseding cause recognized in *Barry* is limited to cases in which the intervening actions of a third party were intended to cause harm. Although appellate cases applying the doctrine of superseding cause after *Barry* have often involved intentional acts perpetrated by a third party or parties on an injured plaintiff; see, e.g., *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 292 Conn. 154;[18] we do not agree that the doctrine's application is limited to such cases as a matter of law or that the plaintiff's view of superseding cause is mandated by our Supreme Court's holding in *Barry*.

First, if we were to accept the plaintiff's argument, we would be left with the possibility of decidedly inequitable results. In those cases in which a negligent defendant could point to an intervening act of negligence by a third party, the defense of superseding cause would be unavailable pursuant to the holding in *Barry*, but the defendant nevertheless potentially could still apportion some of its liability to the third party. In cases in which the negligent defendant could show that the plaintiff's harm was the result of an intervening third party acting with the intent to cause harm, the defendant would be permitted to raise the doctrine of superseding cause and to potentially escape liability outright. The problem with the plaintiff's argument arises in cases in which the intervening actions by the third party exceed mere negligence, for instance, reckless behavior, but do not rise to the level of intentionally causing harm. In such cases, under the plaintiff's view of the law, a defendant would be precluded from seeking apportionment under our existing apportionment statute, but also would be unable to avail himself of the doctrine of superseding cause. Such a defendant would be fully liable to the plaintiff, even in instances in which the actions of a more culpable third party significantly contributed in causing the plaintiff's harm, unless he could show that his own negligence was not a significant factor in causing that harm. Such a result makes the plaintiff's approach to superseding cause untenable.

Second, the court in *Barry* did not limit the doctrine of superseding cause only to those cases involving

intervening conduct that is intended by a third party to cause harm. Rather, in *Barry*, the court exempted from its holding abolishing the doctrine of superseding cause those cases in which a defendant alleged intervention by an "unforeseeable intentional tort, force of nature or criminal event." *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16. We construe that phrase as enumerating three categories of unforeseeable intervening events for which the doctrine of superseding cause retains vitality under our law: intervening intentional torts, intervening forces of nature, and intervening criminal events.

Lack of foreseeability is the linchpin of any superseding cause defense, and, thus, that the *Barry* court's use of the adjective "unforeseeable" in setting forth its exceptions logically can be construed as applying to each of the three items following it. That same construction, however, cannot logically be said to apply to the court's use of the adjective "intentional." "Intentional," as used by the court, logically modifies only the noun "tort," which it immediately precedes. It was necessary, after all, for the court in *Barry* to distinguish intentional torts from the tort of negligence because it held that mere negligence could no longer form the basis of a superseding cause defense.

The term "intentional," however, cannot reasonably be construed to modify the remainder of the enumerated exceptions. The second exception, "force of nature," is not susceptible to such modification because forces of nature are neither intended nor unintended. Given this clear linguistic break, we do not construe the term "intentional" as skipping over the second item in the list, but applying nonetheless to the third item, "criminal event." The term "criminal event" is not rendered unintelligible without applying the "intentional" modifier. Rather, a criminal event properly can be understood to mean any event involving one or more criminal acts without reference to any particular mens rea requirement.

Third, to the extent that the plaintiff cites to *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 607–608, and *Tetro* v. *Stratford*, 189 Conn. 601, 605–606, 458 A.2d 5 (1983), each of which predated *Barry*, as supporting the proposition that a superseding cause "can only exist" in the face of conduct by a third party intended to cause harm, we disagree that those cases decided that issue. Neither case considered or held that a specific intent to cause harm is a necessary prerequisite to raising the doctrine of superseding cause. The cases merely recited the standard contained in § 442B of the Restatement (Second) of Torts. As we have discussed, the language referencing harm "intentionally caused" by a third party in this particular section of the Restatement (Second) of Torts is not wholly consistent with the discussion in the commentary, which refers

generally to criminal acts, not intentional criminal acts. Furthermore, to the extent that the Restatement (Second) of Torts conflicts with the language used in *Barry*, it is not binding on us. As indicated, the exception carved out in *Barry* referred generally to "criminal events," not solely criminal events evincing an intent to cause harm.

Finally, we are not persuaded by the plaintiff's reliance upon language in the model civil jury instructions. Although both parties' request to charge in this case tracked Connecticut Civil Jury Instruction § 3.1-5, addressing superseding cause, the court crafted its own instructions. The model instructions are not intended to be authoritative. As provided on their title page, the model instructions are only meant to provide guidance; their legal sufficiency is not guaranteed. See Connecticut Civil Jury Instructions (Revised to January 1, 2008), available at http://jud.ct.gov/JI/Civil/Civil.pdf (last visited March 20, 2017) ("This collection of Civil Jury Instructions is intended as a *guide* for judges and attorneys in constructing charges and requests to charge. The use of these instructions is *entirely discretionary* and their publication by the Judicial Branch is *not a guarantee of their legal sufficiency*." [Emphasis added.]) Rather than adhering to any particular format, jury instructions must be appropriately tailored to reflect the circumstances of the particular case and to adequately guide the jury. See *Sullivan* v. *Norwalk*, 28 Conn. App. 449, 457, 612 A.2d 114 (1992). The language used in the model jury instructions, although instructive in considering the adequacy of a jury instruction; see *State* v. *Sanchez*, 84 Conn. App. 583, 592 n.10, 854 A.2d 778, cert. denied, 271 Conn. 929, 859 A.2d 585 (2004); is not binding on this court.

In the present case, the defendant alleged by way of a special defense that the overall criminal actions of the teenaged thieves—i.e. a "criminal event"—intervened between Saineval's negligent act and the plaintiff's injuries, and evidence was presented at trial to support those allegations. The "criminal event" at issue was not limited to the theft of the taxicab, which all parties acknowledge was a situation that was foreseeable given Saineval's actions, but included additional criminal acts, which were further removed in both time and distance from the initial theft, and that a jury might reasonably consider unforeseeable.[19] Those additional criminal actions included Bowden driving the stolen taxicab onto a sidewalk in order to escape the consequences of a rear-end collision, which led to his reckless assault of the plaintiff.

Whether Saineval reasonably should have realized that a thief, in taking advantage of his having left the keys in the ignition of his taxicab, might also avail himself of the opportunity to commit the additional criminal acts that occurred, or whether those further

crimes fell so far afield of the hazard created by Saine-val's negligence as to negate his liability, clearly implicates the doctrine of superseding cause. In sum, on the basis of the facts pleaded, the legal theories advanced by the parties, and the evidence produced at trial, this case sufficiently fell within the exceptions announced in *Barry*, in which a defendant claims an unforeseeable intentional tort, act of nature, or criminal event superseded its tortious conduct. Therefore, it was entirely appropriate for the court to submit this doctrine to the jury. We are unconvinced by any of the arguments made by the plaintiff to the contrary.

II

Having determined the applicability of the doctrine of superseding cause to the facts of this case, we turn to the plaintiff's claim that the jury instructions and interrogatories given by the court in this case were improper, warranting a reversal of the judgment and a new trial. We are not persuaded.

Ordinarily, "a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . [Furthermore], [a]lthough it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . The court should, however, submit to the jury the issues as outlined by the pleadings and as reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 421, 886 A.2d 415 (2005).

With respect to jury interrogatories, it is axiomatic that the court has broad discretion in determining their form, content, and the manner in which they are presented. *Viera* v. *Cohen*, 283 Conn. 412, 450, 927 A.2d 843 (2007). The purpose of interrogatories is "to elicit a determination of material facts, [and] to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent. . . . The power of the trial court to submit proper interrogatories to the jury, to be answered when returning their verdict, does not depend upon the consent of the parties or [statutory authority]. In the absence of any mandatory enactment, it is within the reasonable discretion of the presiding judge to require or to refuse to require the

jury to answer pertinent interrogatories, as the proper administration of justice may require." (Citations omitted; internal quotation marks omitted.) Id., 449–50.

It is clear from our review of the record that although the court struggled with whether to address the notion of superseding cause at all, after deciding to do so, it crafted sufficiently appropriate instructions under the circumstances presented. The plaintiff claims that the instructions were improper because they did not require the jury to find that Bowden intentionally harmed the plaintiff and because they did not more fully and accurately define the phrase "scope of the risk." We disagree.

First, we have already indicated in part I of this opinion that we do not agree with the premise advanced by the plaintiff that either a specific intent to harm a plaintiff or criminal conduct of an intentional nature is an absolute prerequisite to considering whether an intervening criminal event amounted to a superseding cause. Nevertheless, the court instructed the jury that it should consider whether the theft of the taxicab, subsequent driving, and resulting rear-end collision and striking of the plaintiff "were *intentional acts* that were not within the scope of the risk which was created by the defendant's conduct . . . ." The plaintiff never asked the court to modify the charge to include a reference to a specific intent to harm, arguing only that it did not think the language referencing scope of the risk was necessary. If there was any error in that portion of the charge, it was in the court's failure to track more closely the language from *Barry* by directing the jury to consider whether the teens' actions amounted to either an unforeseeable intentional tort *or criminal event* that was outside the scope of the risk created. That omission, however, favored the plaintiff, who claims she believes the jury should have been directed to focus its consideration on intentional acts rather than on criminal activity in general. In any event, because the court was not required to instruct on an "intent to [cause] harm," we reject that aspect of the plaintiff's claim.

Second, we are unconvinced that the court's instruction on "scope of the risk" was so deficient as to warrant a new trial because it failed to define in detail the meaning of that phrase in the context of considering whether there was a superseding cause. The instructions were not required to be as detailed and precise as a legal opinion. They simply needed to appropriately guide the jury in its consideration of the legal issues before it. Nothing in the record indicates that the jury struggled with that term. The jury did not ask for additional instructions on the meaning of scope of the risk. We conclude on the basis of our review of the jury instructions as a whole that, although perhaps not perfect in all respects, the instructions were sufficient to inform the jury of the doctrine of superseding cause as

pleaded and to guide the jury through its deliberation to a proper verdict. Accordingly, we reject the plaintiff's claim of instructional error.

## III

Finally, the plaintiff claims that the court improperly denied her motion to set aside the verdict and for a new trial because the jury's verdict was irreconcilable with the jury's interrogatory responses. We are not persuaded, and conclude that the court properly denied the plaintiff's postjudgment motion.

Although appellate courts ordinarily apply an abuse of discretion standard in reviewing a trial court's action granting or denying a motion to set aside a verdict, our review is, of course, plenary, whenever the claim on appeal raises a question of law. *Tomick* v. *United Parcel Service, Inc.*, 135 Conn. App. 589, 603, 43 A.3d 722, cert. denied, 305 Conn. 920, 47 A.3d 389 (2012). Here, whether the jury's determination that Saineval's negligent actions were a proximate cause of the plaintiff's injury is legally inconsistent with a defendants' verdict raises a legal question, and, thus, we employ plenary review.

"When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270, 698 A.2d 838 (1997). "The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to . . . interrogatories is extremely limited. . . . To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must [negate] every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered at the trial." (Citation omitted; internal quotation marks omitted.) Id., 269–70.

In the present case, we have determined that the jury was properly instructed on the doctrine of superseding cause as a special defense. In the end, the jury returned a verdict in favor of the defendants on that defense. The jury's affirmative responses to the first three of five interrogatories answered reveals that the jury concluded that (1) Saineval's actions in leaving his taxicab unattended in an area known for crime with the keys in the ignition breached his duty of reasonable care, and that (2) the theft of the taxicab and (3) some subsequent "accident, causing injury" were foreseeable conse-

quences of that breach.[20] Having so determined, we can perceive of two possible ways that the jury, consistent with its answers, nevertheless could find in favor of the defendants.

First, the jury reasonably could have found that the intervening actions of the teens so diminished the effect of Saineval's own careless actions that Saineval's negligence was not a substantial factor in the plaintiff's injuries, in which case, the jury properly would have answered no to the fourth interrogatory asking whether any of the plaintiff's injuries were proximately caused by Saineval's negligence. If the jury followed the interrogatories instructions, the jury would have returned a defendants' verdict without reaching the issue of superseding cause. The jury, however, answered yes to the forth interrogatory.

Second, the jury reasonably could have found that although Saineval's actions were a substantial factor in causing the plaintiff's injuries, Bowden's actions, which occurred further down the causal chain, superseded the defendants' liability. The jury was thus free to answer the fourth interrogatory in the affirmative as it did, but nevertheless also consider whether the intervening criminal acts of the teens in this case fell outside the scope of the risk created by Saineval. In other words, the intervening criminal acts could be construed as having superseded any liability attributable to the defendants. Thus, we conclude that the jury's answer to interrogatory five regarding the scope of the risk was not irreconcilable with the determination that Saineval's actions also proximately caused the plaintiff's injuries, and both were consistent with the verdict returned in favor of the defendants. Accordingly, the plaintiff has not demonstrated that the court's denial of her motion to set aside the verdict and for a new trial reflected an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also cited in as a defendant Vito Bochicchio, Jr., the sole shareholder of Yellow Cab. See footnote 5 of this opinion. For purposes of clarity we refer to Saineval and Yellow Cab as the defendants.

[2] Although Saineval at first had maintained that he left the cab unattended in order to help a customer to whom he had just provided service carry in groceries, he later testified at trial that he went inside the complex to talk to a relative, but that he was gone only for a short time.

[3] At the time of trial, Bowden was incarcerated because of his role in the incident. Bowden admitted during his trial testimony that he had pleaded guilty to larceny, assault in the first degree, reckless endangerment, and evading responsibility with death or serious injury resulting.

[4] The plaintiff filed a separate civil action alleging negligent security practices by the companies that purportedly owned and managed Monterey Village. That action was consolidated with the present case, but later was settled and withdrawn prior to trial. The jury nevertheless heard evidence pertaining to one of those companies, Vesta Management Corporation, and was instructed that it could consider for apportionment purposes whether and to what extent its negligence was also a cause of the plaintiff's injuries.

[5] The operative complaint contained four additional counts directed at Yellow Cab and its owner and sole shareholder, Vito Bochicchio, Jr. These additional counts alleged that Bochicchio had, among other things, misdi-

rected assets away from Yellow Cab's accounts in an effort to keep funds away from the plaintiff. The counts sounded in fraud and fraudulent transfer, and sought to "pierce the corporate veil" between Yellow Cab and Bochicchio in the event Yellow Cab was found vicariously liable to the plaintiff for damages. The parties agreed with the court's decision to proceed with a bifurcated trial in which the additional counts would be presented to the jury only if the jury returned a plaintiff's verdict on the negligence counts and awarded damages. Although the record and judgment file do not reflect any express disposition of the additional bifurcated counts following entry of the verdict for the defendants on the negligence counts, the court's judgment for the defendants on the negligence counts nevertheless effectively disposed of the additional counts. See *Bridgeport* v. *White Eagle's Society of Brotherly Help, Inc.*, 140 Conn. App. 663, 667 n.5, 59 A.3d 859 (2013).

Even if we were to determine that the judgment rendered by the court failed to dispose of the plaintiff's additional counts, the judgment nevertheless fully disposed of all counts in the complaint brought against Saineval and, thus, was an appealable final judgment with respect to him. See Practice Book § 61-3. Accordingly, we perceive no jurisdictional bar to our adjudication of the plaintiff's claims on appeal. Moreover, to the extent that the judgment is not final as to Yellow Cab because of the unresolved counts of the complaint against it; see Practice Book § 61-4; Yellow Cab's liability to the plaintiff is entirely derivative of Saineval's negligence and, thus, our resolution of this appeal in favor of Saineval is equally determinative of Yellow Cab's liability, regardless of any final judgment issue.

[6] "[T]he theory of respondeat superior attaches liability to a principal merely because the agent committed a tort while acting within the scope of his employment. It refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." (Internal quotation marks omitted.) *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 505, 656 A.2d 1009 (1995), citing W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 70, p. 502.

[7] The plaintiff's request to charge was filed before trial on November 3, 2014. The defendants filed their request to charge during trial on December 9, 2014, with the permission of the court.

[8] We note that the court's use of the term "accident" was somewhat imprecise because it failed to indicate whether it was referring to the rear-end automobile collision, the subsequent striking of the plaintiff with the taxicab, or to the entirety of the events that occurred that day following the theft of the taxicab. The term is also susceptible to being misinterpreted as referring only to careless or negligent behavior, rather than the reckless criminal conduct at issue in this case. Any such ambiguity, however, was not raised by the plaintiff in its objection to the interrogatory and the use of that term is not challenged on appeal.

[9] In *Sullivan*, the plaintiff administrator of the estate of a railroad passenger who was assaulted and fatally shot at a train station brought an action against the defendant commuter railroad for negligence on the theory that the railroad had provided inadequate security at the station, creating the risk of an attack on a commuter by a third party. *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 292 Conn. 152–53. Our Supreme Court affirmed this court's decision that the trial court properly had instructed the jury on the doctrine of superseding cause, which, as in the present case, was raised as a special defense. Id., 165–66. The instruction provided by the trial court in *Sullivan*, and approved by our Supreme Court, provided in relevant part: "One of the defenses of the defendant is that even if you were to find it negligent, which negligence it denies, the actions of [the third party] intervened to break the chain of causation between its alleged negligence and [the decedent's] death. . . . [I]f you find that the actions of [the third party] intervened and superseded any negligence on the part of the defendant, then the defendant cannot be responsible to the plaintiff and your verdict must be for the defendant. If you find that [the third party's] intentional acts were not within the scope of the risk which may have been created by the defendant's conduct, then the actions of [the third party] may be found by you to be the proximate cause of the plaintiff's injuries relieving the defendant of liability even if you find that the defendant was negligent and [its] negligence created a situation which afforded an opportunity to [the third party] to commit the crime." (Internal quotation marks omitted.) Id., 165–66.

[10] One of the crimes Bowden pleaded guilty to as a result of his having run over the plaintiff with the stolen taxicab was assault in the first degree. General Statutes § 53a-59 provides that a person can be found guilty of assault in the first degree in five possible ways. Four require that the person act in a proscribed manner *intending* to cause serious physical harm or disfigurement. The other, however, requires that "under circumstances evincing an extreme indifference to human life [the person] *recklessly* engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ." (Emphasis added.) General Statutes § 53a-59 (a) (3).

[11] In making this argument, the plaintiff appears, at least tacitly, to acknowledge the legal possibility that the jury could find for the plaintiff as to all elements of her prima facie case, including a finding of proximate cause, but nonetheless ultimately return a verdict for the defendants on the basis of superseding cause. This viewpoint is not entirely consistent with the position she takes on appeal as addressed in part III of this opinion.

[12] Although the plaintiff indicates in her brief to this court that this claim was raised to the court prior to the completion of the trial, we do not view the plaintiff's objections before the trial court as arguing that the doctrine of superseding cause had no applicability, but that the court's original draft of its instructions regarding proximate causation were sufficient to guide the jury in its consideration of the defense of superseding cause, and that the additional instruction and interrogatory proposed and ultimately given by the court would confuse the jury. It was not until the motion to set aside the verdict and for a new trial were filed that the plaintiff framed its argument as one of inapplicability.

[13] We note that the modern approach to superseding cause, as reflected in § 34 of the Restatement (Third) of Torts, and related reporter's notes, is to treat the notion of superseding cause as a facet of scope of liability, a term the Restatement uses in discussing what courts refer to as proximate causation. 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm, § 34, pp. 569–92 (2010). As noted by the reporter's notes, our Supreme Court's decision in *Barry* reflects a jurisprudential move toward embracing that approach. Id., reporter's notes, p. 579. The Supreme Court in *Barry*, however, left vestiges of the older approach—analyzing superseding cause as a distinct doctrine—in place, adopting the modern approach only with respect to intervening acts of negligence. *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439 n.16. The court's opinion in *Barry* is silent as to the court's reasoning for carving out its exceptions, but perhaps it reflects the reality of our apportionment statute, which strictly limits apportionment to acts of negligence. In any event, in cases such as the present one, we are left to treat superseding cause as related to, but distinct from, the proximate cause inquiry.

[14] We have modified this passage in *Barry*, which refers several times to a third party's superseding *negligence*, to reflect the court's holding in that case that a defendant may no longer raise a defense of superseding cause on the basis of an alleged intervening act of negligence by a third party.

[15] We recognize that there is some tension between the definition in the Restatement (Second) of Torts of superseding cause and the quoted statement by the court in *Barry* that a superseding cause be viewed as the "sole proximate cause" of a plaintiff's injuries. *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 435. Comment (b) of § 440 of the Restatement (Second) of Torts clarifies that "[a] superseding cause relieves the actor of liability, *irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm.*" (Emphasis added.) We construe the reference in *Barry* to "sole proximate cause" not as a repudiation of the Restatement's broader definition but simply as a recognition that in some cases involving a superseding cause, the superseding event may so diminish the impact of the initial negligence of the defendant that that negligence can no longer be viewed as a substantial factor in bringing about the plaintiff's injury, thus transforming the superseding cause into the sole proximate cause of the harm. This iteration of the doctrine, however, does not expressly preclude that in certain cases factually distinct from that considered by the court in *Barry*, the impact of the defendant's initial negligence will not be so diminished by the later intervening act as to fully negate the initial negligence as a substantial factor in causing the harm at issue. In such cases, application of the doctrine of superseding cause may nonetheless be justified to prevent an otherwise inequitable determination regarding liability.

[16] In reaching its conclusion, the court recognized the shifting nature of

superseding cause jurisprudence within the body of tort law, explaining that one learned treatise states that superseding cause has less to do with causation than with policy concerns about imposing legal responsibility for a particular harm, whereas another views superseding cause strictly as "proximate cause flowing from a source not connected with the party sought to be charged." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, supra, 263 Conn. 439.

[17] If our Supreme Court believed that the doctrine of superseding cause should no longer be raised by a defendant by way of special defense, and that the issue should in all instances be considered as an aspect of proximate cause, the Supreme Court had an opportunity to address this in *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 292 Conn. 150. Although the court in *Sullivan* noted the fact that superseding cause was raised in that case by way of special defense, it did not comment about the propriety of such procedures or discuss which party has the burden of proof. Id., 167.

In the present case, the trial court instructed the jury that the defendants had the burden to prove that the teens' actions were a proximate cause of the plaintiff's injuries that superseded Saineval's negligence. The superseding cause interrogatory also allocated the burden of proof to the defendants, asking "did defendant prove" that the teens' actions fell outside the scope of the risk created by Saineval. Neither party has argued that the burden of proof was improperly allocated in the present case. We are aware that there is a lack of clarity in our case law regarding whether the doctrine of superseding cause must be pleaded as a special defense or whether, post-*Barry*, the doctrine is merely an aspect of proximate cause analysis. Because that issue was not raised and briefed by the parties in the present case, we leave its resolution for another day.

[18] Although our Supreme Court determined that the superseding cause instruction given by the court in *Sullivan* was proper; see footnote 9 of this opinion; and that the instruction required the jury to consider whether "[the third party's] *intentional* acts were not within the scope of the risk," this does not support the plaintiff's claim. (Emphasis added; internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter Railroad Co.*, supra, 292 Conn. 166. The court's charge merely reflects the factual reality that, in *Sullivan*, the alleged superseding cause was indisputably an intentional attack and shooting of the plaintiff; the instruction in no way reflects any legal determination that a third party's intervening actions must *always* involve an intent to harm in order to qualify as a superseding cause.

[19] In a number of jurisdictions that have considered the proper scope of liability for a defendant who negligently left the keys in a vehicle resulting in a theft of the vehicle, those courts have recognized a legally significant distinction between injuries from a collision that occurred in close proximity to the theft and while the thief was in flight, and injuries resulting from a collision occurring several hours after the theft and several miles from the scene. See, e.g., *Wannebo* v. *Gates*, 227 Minn. 194, 201, 34 N.W. 2d 695 (1948) ("[e]ven if one should be of the opinion that the tortious acts of a thief in fleeing in a stolen car from the scene of his crime would be within a foreseeable risk, where a car was left unlocked with the key in the ignition switch on a busy public street, yet it does not follow that the original actor should be held liable for the tortious acts of the thief or his successor in possession of the car *if such acts took place hours, days, weeks, or months after the flight from the scene of the theft had terminated*" [emphasis added]); see also *Childers* v. *Franklin*, 46 Ill. App. 2d 344, 354, 197 N.E. 2d 148 (1964) (no liability because injury occurred some distance away after flight of thief had terminated); *Dersookian* v. *Helmick*, 256 Md. 627, 634, 261 A.2d 472 (1970) (no liability because accident occurred miles from theft and five days later); see generally annot., 45 A.L.R.3d 787, §§ 9 [b], 10, pp. 815–17 (1972). Some courts have taken the position that liability becomes a jury question only in cases in which the plaintiff's injuries occurred during the flight from the initial theft or relatively close in time and distance, otherwise there is no liability as a matter of law. Id., pp. 816–17. In this case, the harm to the plaintiff occurred, not during the teens' flight from the theft of the taxicab, but hours later and many miles away.

[20] The third interrogatory did not ask the jury to determine whether, in light of the theft of the taxicab, the entire sequence of criminal events that transpired in this case was foreseeable. The plaintiff never asked the court to use more specific language, and she did not challenge the interrogatory's use of the term accident, which was ambiguous under the facts of the present case. See footnote 8 of this opinion.